NO. 25-3372

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

GREGORY LANGADINOS,

Plaintiff-Appellant,

v.

WASHINGTON STATE BAR ASSOCIATION, et al.,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

No. 2:23-cv-00250-JNW
The Honorable Jamal N. Whitehead, United States District Court Judge

APPELLEE WASHINGTON STATE SUPREME COURT'S MOTION TO
DISMISS DUE TO LACK OF JURISDICTION, AND MOTION TO STAY
SCHEDULE ORDER PENDING RULING ON MOTION TO DISMISS

NICHOLAS W. BROWN
Attorney General

KELSEY E. ENDRES, WSBA 39409
Assistant Attorney General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
kelsey.endres@atg.wa.gov

WILLIAM MCGINTY, WSBA 41868
Deputy Solicitor General
Solicitor General's Office
1125 Washington Street SE
Olympia, WA 98504-0100
360-753-6200
william.mcginty@atg.wa.gov

Attorneys for Defendant-Appellee Washington Supreme Court

## I.    INTRODUCTION

The Court of Appeals does not have jurisdiction over this appeal. It should be dismissed.

## II.    ISSUE PRESENTED FOR REVIEW

Whether the Court of Appeals lacks jurisdiction because there is no final, appealable order at issue in the case, and whether the Time Schedule Order should be stayed pending the outcome of this motion.

## III.    STATEMENT OF THE CASE

Pro se plaintiff Gregory Langadinos (Langadinos) sued the Washington State Bar Association (WSBA), certain WSBA employees, and the Washington State Supreme Court (WSSC), alleging that the WSBA's website lacked assistive technology to ensure that Langadinos, who is reportedly disabled, was able to apply for the Washington State bar examination in 2020. D. Ct. Dkt. 1. Since he was not registered for the bar exam at the time, Langadinos did not qualify for the "diploma privilege" admission to practice law temporarily offered by the WSSC during the COVID pandemic. *Id.*

Langadinos filed a complaint nearly three years later, alleging (in addition to claims against the WSBA) that the WSCC violated the Americans with Disabilities Act, the Rehabilitation Act of 1973, the Washington Law Against

Discrimination, and the Fourteenth Amendment. *Id.* Among other things, he sought an injunction ordering the WSSC to grant him the diploma privilege as well as a declaratory judgment affirming his right to be retroactively awarded the diploma privilege. *Id.* The WSSC moved to dismiss all claims under Fed. R. Civ. P. (Rule) 12(b)(1) and (6).[1] D. Ct. Dkt. 10.

In March 2024, the Court granted the WSSC's motion to dismiss in full but allowed Langadinos to seek leave to file a proposed amended complaint relating only to the few remaining claims against the WSSC that were dismissed without prejudice. D. Ct. Dkt. 38.[2] The Court denied Langadinos' subsequent motion for leave to amend as futile on March 26, 2025, confirming dismissal of all claims against the WSSC. D. Ct. Dkt. 62.[3] On April 9, 2025, Langadinos filed a motion for reconsideration. D. Ct. Dkt. 64. It was denied on April 25, 2025, and the District Court ordered Langadinos and the WSBA to proceed with a joint status report and discovery plan for the remaining claim against the WSBA.[4]

---

[1] The WSBA and its employees also filed a motion to dismiss, which was granted in part. D. Ct. Dkts. 11, 38. Langadinos' ADA public accommodation discrimination claim against the WSBA proceeds as stated in his original complaint.

[2] The trial court's opinion is attached hereto as Exhibit 1.

[3] The trial court's opinion is attached hereto as Exhibit 2.

[4] The trial court's opinion is attached hereto as Exhibit 3. Langadinos' Notice of Appeal incorrectly states that the motion for reconsideration was denied on April 26, 2025.

D. Ct. Dkt. 67. The District Court did not issue a Rule 54(b) certification of final judgment for the WSSC.

Langadinos filed a Notice of Appeal on May 25, 2025. D. Ct. Dkt. 70. The Notice asserts that he intends to appeal the March 26 and April 25 orders resulting in the WSSC's dismissal. Under the Clerk's Time Schedule Order, Langadinos' Appeal Opening Brief is due by July 7, 2025, and the WSSC's Appeal Answering Brief is due by August 6, 2025. DktEntry: 2.1.

## IV.  ARGUMENT

### A.    This Court Lacks Jurisdiction

"From the very foundation of our judicial system," the general rule has been that "the whole case and every matter in controversy in it [must be] decided in a single appeal." *Microsoft Corp. v. Baker*, 582 U.S. 23, 36 (2017) (quoting *McLish v. Roff*, 141 U.S. 661, 665–666 (1891)). United States courts of appeals thus have appellate jurisdiction over district courts' "final decisions . . . ." 28 U.S.C. § 1291; *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981) ("the finality requirement embodied in § 1291 is jurisdictional in nature."). Except in limited circumstances not at issue, "any order . . . that adjudicates . . . the rights and liabilities of fewer than all the parties does not end the action" and is therefore not final for appeal purposes. Rule 54(b). The final-

3

judgment rule "preserves the proper balance between trial and appellate courts, minimizes the harassment and delay that would result from repeated interlocutory appeals, and promotes the efficient administration of justice." *Microsoft*, 582 U.S. at 36–37; *see also George v. Camacho*, 119 F.3d 1393, 1397 (9th Cir. 1997) ("What underlay the Court's decision in *Firestone* was the need to ensure that litigants would not engage in piecemeal litigation, clogging the circuit courts with interlocutory appeals.").

"A district court order is therefore not appealable unless it disposes of all claims as to all parties or unless judgment [for one party] is entered in compliance with Federal Rule of Civil Procedure 54(b)." *Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738, 747 (9th Cir. 2008). In relevant part, Rule 54(b) provides: "[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all . . . parties only if the court expressly determines that there is no just reason for delay." Rule 54(b). Without such a finding by the District Court, the Court of Appeals does not have jurisdiction over an attempted interlocutory appeal of the dismissal of only one of several defendants.

Given that the final judgment rule set forth in 28 U.S.C. § 1291 is jurisdictional, "[i]f the appellate court finds that the order from which a party

seeks to appeal does not fall within the statute, its inquiry is over." *Firestone*, 449 U.S. at 379. That is squarely the case here.

There is no dispute that while all claims against the WSSC were dismissed, the District Court did not dismiss all claims against the WSBA and the underlying case continues on that basis. Moreover, the District Court did not issue a Rule 54(b) certification of final judgment in favor of the WSSC. This Court does not have jurisdiction over the orders identified in Langadinos' Notice of Appeal, and the appeal should be dismissed.

**B.    The Time Schedule Order Should Be Stayed Pending Resolution of Jurisdictional Question**

Under Fed. R. App. P. 26(b), this Court may extend the deadlines to submit the Appeal Opening Brief and Appeal Answering Brief for good cause. Good cause exists to stay the Time Schedule Order (DktEntry: 2.1) pending resolution of this motion, so that the parties do not expend unnecessary time and resources in briefing substantive issues that this Court does not have jurisdiction to decide.

## V.    CONCLUSION

For the foregoing reasons, this appeal should be dismissed for lack of jurisdiction, and the current Time Scheduling Order should be stayed pending ruling.

RESPECTFULLY SUBMITTED this 18th day of June 2025.

NICHOLAS W. BROWN
Attorney General

*s/ Kelsey E. Endres*
KELSEY E. ENDRES, WSBA #39409
Assistant Attorney General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744
kelsey.endres@atg.wa.gov

WILLIAM MCGINTY, WSBA #41868
Deputy Solicitor General
Solicitor General's Office
1125 Washington Street SE
Olympia, WA  98504-0100
360-753-6200
william.mcginty@atg.wa.gov

Attorneys for Defendant-Appellee
Washington Supreme Court

# Exhibit 1

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GREGORY LANGADINOS, | CASE NO. 2:23-cv-250 |
| Plaintiff, | ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS |
| v. | |
| WASHINGTON STATE BAR ASSOCIATION, WASHINGTON STATE BAR ASSOCIATION BOARD OF GOVERNORS, LISA AMATANGEL, Associate Director; Litigation and Internal Operations, JULIE SHANKLAND, Coordinator; ADA/504 WSBA, WASHINGTON STATE SUPREME COURT, | |
| Defendants. | |

## 1. INTRODUCTION

In response to the COVID-19 pandemic and civil rights protests following the murder of George Floyd, the Washington State Supreme Court waived the bar exam requirement for graduates of accredited law schools who were registered by the appropriate cutoff to take the July or September 2020 bar exams. This has been

called the "diploma privilege" option for admission to the Washington State Bar Association (WSBA) and the practice of law in Washington.

Plaintiff Gregory Langadinos, proceeding pro se,[1] sues the State Supreme Court, the WSBA, and others, seeking admission to the Washington bar and damages—in sum, he argues he was denied the diploma privilege because of his disabilities. Both Defendants move to dismiss his complaint for lack of jurisdiction. Dkt. Nos. 10, 11. The Court has reviewed the papers submitted in support of and in opposition to the motions, and finds that oral argument is unwarranted. For the reasons explained below, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss.

## 2.  BACKGROUND

The Court accepts all facts as true from the complaint and construes them in the light most favorable to Langadinos. Fed. R. Civ. P. 12(b)(6).

Langadinos, a California resident, earned a juris doctor degree from the Appalachian School of Law on May 8, 2004. Dkt. No. 1 ¶¶ 6, 36; *see also* Dkt. No. 1 at 100. The complaint is silent, however, about whether Langadinos has been admitted to a state bar since his graduation or otherwise engaged in the practice of law. *See generally id.*

On consecutive days from March 3 to March 6, 2020, Langadinos "repeatedly attempted to apply over the internet to register" and pay for the July 2020 bar exam

---

[1] In his complaint, Langadinos states he is proceeding pro se until the Court rules on his California attorney's application for leave to appear pro hac vice and to waive Local Civil Rule 83.1(d). Dkt. No. 1 ¶ 2. But to date, no attorney has appeared on Langadinos's behalf. *See* Dkt.

on the WSBA's website. *Id.* ¶ 24. He alleges the website was not working properly and that it repeatedly rejected his completed applications. *Id.* ¶ 25. Langadinos has "thyroid eye disease, exophthalmos" and a "neurogenic bladder disorder," which prevent him "from staring at a computer screen for an extended period of time." *Id.* According to Langadinos, the WSBA's website, however, did not offer "Job Access with Speech" or "other computer applications for visually impaired applicants." *Id.* ¶ 5. By his estimate, Langadinos called the WSBA about eight times to report that its website "was not working properly." *Id.* ¶ 28.

Langadinos also mailed and faxed a letter to Gus Quinones, the WSBA's Admissions Manager, on March 27, 2020, requesting an accommodation for his disabilities. *Id.* ¶ 30. In his letter, Langadinos explained that his medical treatment and "neurogenic bladder disorder requiring [him] to catheterize and suffer pain throughout the day[,]" made it "very inconvenient" to spend multiple hours a day trying "to access the web site without any progress" and, as a reasonable accommodation, he requested "to receive a hard copy application" for the July 2020 bar exam. Dkt No. 1 at 29-31. The WSBA did not respond to Langadinos's letter. *Id.* ¶ 31.

On June 12, 2020, the State Supreme Court issued an order modifying the Washington Admission and Practice Rules (APR) 3 and 4. The order granted applicants the option of receiving a diploma privilege to practice in Washington so long as they were already registered to take the July or September 2020 bar examination and they received a Juris Doctorate from an ABA accredited law school. *Id.* ¶ 33; *see also id.* at 53-54.

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS - 3

Langadinos was not registered to take the 2020 bar examination when the State Supreme Court instituted the diploma privilege. Langadinos contacted the court about his failed attempts to register. Specifically, "[d]uring the week of June 15, 2020," Langadinos contacted Lisa Armstrong, the State Supreme Court's Administrative Coordinator. Dkt. No. 1 at 70 ¶ 9. At some point, he also wrote the State Supreme Court. *See id.* ¶ 53.

On June 25, 2020, Chief Justice Debra Stephens emailed Langadinos. She began by saying, "[t]hank you for your email and letter requesting an expansion of the Diploma Privilege to your circumstances . . . ." *Id.* at 50. And ended by saying, "[t]he balance of interests counsels against further modification of the court's order, though I appreciate this is disappointing to you, and your circumstances are unfortunate." *Id.* at 51.

For the next several weeks, Langadinos communicated with multiple WSBA staff members, asking that he be granted the diploma privilege given his failed attempts to register—through no fault of his own, he alleges—and unanswered reasonable accommodation request. On June 26, 2020, Langadinos spoke to the WSBA Associate Director for Regulatory Affairs, Robert W. Henry. Dkt. No. 1 ¶¶ 38, 40-42. On July 3, 2020, Langadinos spoke with WSBA General Counsel Jean McElroy. *Id.* ¶ 44. In an email, McElroy requested further evidence of Langadinos's prior registration attempts in March, April, and May 2020. *Id.* at 42.

On August 3, 2020, Langadinos's then-attorney, James Neyman, submitted a "formal petition" for diploma privilege via "first class U.S. mail as well as email" to Lisa Amatangel, Associate Director for Litigation and Internal Operations for the

Office of General Counsel. *Id.* at 60-67. The WSBA maintained that Langadinos was ineligible for diploma privilege under State Supreme Court's order. *Id.* at 75.

Langadinos also contacted the Clerk's Office of the State Supreme Court on September 1, 2020. Dkt. No. 1 at 90. In response, a clerk wrote that "by court rule, the administration of the bar examination is delegated to the WSBA" and "[t]here is no process for appealing such individual determinations [about accommodations] to the Supreme Court." *Id.* at 89.

On February 23, 2023, Langadinos filed a complaint, alleging WSBA and the State Supreme Court violated Title II of the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973, the Washington Law Against Discrimination (WLAD), and the Fourteenth Amendment. *Id.* ¶¶ 48-105. Langadinos further alleges the state-law claim of intentional infliction of emotional distress. *Id.* ¶¶ 106-111.

## 3. DISCUSSION

### 3.1 Legal standards.

#### 3.1.1 Rule 12(b)(1).

The Court must dismiss a complaint under Rule 12(b)(1) if it lacks subject matter jurisdiction. Thus, an action will be dismissed if it (1) does not arise under the Constitution, laws, or treaties of the United States, or falls outside one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *See Baker v. Carr*, 369 U.S. 186, 198 (1962).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

A Rule 12(b)(1) jurisdictional attack may be facial, in which the defendant asserts the allegations within the complaint are not enough on their face to invoke federal jurisdiction, or factual, in which the defendant disputes the truth of the factual claims. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In a factual attack, however, "[t]he court need not presume the truthfulness of the plaintiff's allegations," and it may "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039.

### 3.1.2    Rule 12(b)(6).

The Court will grant a Rule 12(b)(6) motion to dismiss only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard is less than probability, "but it asks for more than a sheer possibility" that a defendant did something wrong. *Id.* (citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557). A plaintiff must have pled "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

When considering a motion to dismiss, the Court accepts factual allegations pled in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (internal quotation marks omitted).

### 3.2    The *Rooker-Feldman* doctrine bars Langadinos's claims for injunctive and declaratory relief.

The defendants raise multiple grounds for dismissing Langadinos's complaint, but the Court begins with their jurisdictional challenges since all other issues will become moot if the Court lacks subject matter jurisdiction. *See Khalaj v. United States*, 474 F. Supp. 3d 1029, 1033 (D. Ariz. 2020). The State Supreme Court

and the WSBA both argue that the *Rooker-Feldman* doctrine divests the Court of subject matter jurisdiction.[2]

The *Rooker-Feldman* doctrine derives from two Supreme Court cases: *Rooker v. Fidelity Tr. Co.,* 263 U.S. 413 (1923), and *D.C. Ct. of Appeals v. Feldman,* 460 U.S. 462 (1983). "It stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state-court judgments." *Carmona v. Carmona,* 603 F.3d 1041, 1050 (9th Cir. 2010). And it is usually reserved for those "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Ninth Circuit takes a two-step approach to the *Rooker-Feldman* doctrine. First, the court must determine whether the plaintiff is seeking a "forbidden de factor appeal" of a state court judicial decision. *Noel v. Hall*, 341 F.3d 1148, 1158

---

[2] The State Supreme Court also argues the case should be dismissed under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 41 (1971) ("forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances."). *Younger* abstention is a doctrine of equitable restraint, not a jurisdictional limitation. *Ohio Civil Rts. Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 626 (1986). It applies to state civil proceedings when, among other requirements, the proceeding is ongoing and constitutes a quasi-criminal enforcement action. *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020). The State Supreme Court fails to identify an ongoing case implicating a quasi-criminal enforcement action in state court that was pending at the time Langadinos filed this action in federal court. Additionally, because the Court finds it lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine it declines to consider whether it should abstain under *Younger*.

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS - 8

(9th Cir. 2003). Then, and "[o]nly when there is already a forbidden de facto appeal" found, must the court consider whether the issues in the federal case are so "inextricably intertwined" with the state court judicial decision from which the forbidden appeal arises. *Id*.

Thus, the Court turns first to whether Langadinos seeks a forbidden de facto appeal.

### 3.2.1    Langadinos seeks a forbidden de facto appeal.

"To determine whether an action functions as a de facto appeal, we pay close attention to the relief sought by the federal-court plaintiff." *Hooper v. Brnovich*, 56 F.4th 619, 624 (9th Cir. 2022) (internal quotations omitted). "A 'forbidden de facto appeal under *Rooker-Feldman*' arises 'when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court.'" *Id*. (quoting *Noel,* 341 F.3d at 1163).

Langadinos primarily claims he was "wrongfully deprived" the diploma privilege option and thus admission into the Washington bar. Dkt. No. 1 at 25. Among other things, he seeks an injunction granting him diploma privilege bar admission and a declaratory judgment settling the dispute "as to the validity of . . . [Langadinos's] right to be awarded diploma privilege." *Id*. at 16, 25. He alleges the State Supreme Court and WSBA should have expanded the diploma privilege, allowing him to apply for the July 2020 bar exam after the cutoff because the WSBA's website was not working properly when he tried to register earlier. In short, Langadinos argues the State Supreme Court and WSBA reached the wrong

1
2
3
4
5

decision about the application of the diploma privilege, and he seeks review in federal court. *See Hooper,* 56 F.4th at 624 (an action is a de facto appeal "[w]here the federal plaintiff complains of harm caused by a state court judgment that directly withholds a benefit from him based on an allegedly erroneous ruling by that court. . .." (internal quotation marks omitted)).

6
7
8
9
10
11
12
13
14
15
16
17
18
19

But before the Court can determine whether this action constitutes a de factor appeal for purposes of *Rooker-Feldman*, it must determine whether the State Supreme Court and WSBA's decision *not* to expand or modify the diploma privilege for Langadinos constitutes a judicial decision. The Supreme Court analyzed this question in *Feldman.* There, two applicants sought membership in the District of Columbia bar without examination, but the D.C. bar's Committee on Admissions denied their applications because they did not satisfy the rule requiring applicants to be graduates of approved law schools. *Id.* at 465-66, 471-73. They petitioned the D.C. Court of Appeals—D.C.'s highest "state" court—seeking a waiver of the rule. *Id.* One applicant also wrote a letter to the Chief Judge presenting his case for why the rule should not apply to him, but the Chief Judge responded stating that the court would not waive the rule. *Id.* at 467-68. The court eventually issued orders denying the petitions, and the applicants filed a federal lawsuit in the U.S. District Court for the District of Columbia. *Id.* at 467, 472-73.

20
21
22
23

The Supreme Court considered whether the proceedings before the D.C. Court of Appeals were judicial, administrative, or ministerial in nature because if they were judicial, only the Supreme Court could hear a direct appeal since the decision was made by a state's highest court. *Id.* at 476-79. The Court held that the

1
2
3
4

decision to deny the bar applications involved a "judicial inquiry" and was thus judicial in nature because "the court was called upon to investigate, declare, and enforce liabilities as they stood on present or past facts and under laws supposed already to exist." *Id.* at 477-79 (cleaned up).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

The decision denying Langadinos's admission into Washington practice is similarly judicial in nature. To start, the power to determine who may practice law in Washington is "vested exclusively" in the State Supreme Court. *State v. Cook*, 525 P.2d 761, 763 (Wash. 1974). In the exercise of its inherent and plenary authority to regulate law practice in Washington, the State Supreme Court formulates the rules governing the admission to practice, *City of Seattle v. Ratliff*, 667 P.2d 630, 632 (Wash. 1983), and "authorizes and supervises the [WSBA's] activities," *Beauregard v. Wash. State Bar Ass'n*, 480 P.3d 410, 416 (Wash. 2021) (quoting Wash. Rules of General Application 12.2) ("[T]he Board of Governors, acting in [the area of attorney admissions], is an arm of the [State Supreme Court]"). The WSBA, in turn, reviews all applicants to determine whether they have met "all the requirements for admission" before "recommend[ing] to the [State] Supreme Court the admission or rejection" of any applicant. APR 5(k). But the power to admit or reject rests always with the State Supreme Court as one of the powers inherent in the judiciary. *Application of Schatz*, 497 P.2d 153, 155 (Wash. 1972).

21
22
23

Langadinos made a "judicial inquiry" when he asked the WSBA and the State Supreme Court to investigate the circumstances of his failure to register timely for the bar exam and to modify the State Supreme Court's order establishing the

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS - 11

diploma privilege for attorney admission. *See Feldman,* 460 U.S. at 479. Between June and September 2020, Langadinos spoke with various WSBA staffers and corresponded with Justice Stephens about his requested "expansion" of the diploma privilege. *See* Dkt. No. 1 at 50 (email from Justice Stephens saying "[t]hank you for your email and letter requesting an expansion of the Diploma Privilege to your circumstances"); *see also* Dkt. No. 1 ¶ 53 ("Langadinos exhausted numerous administrative remedies . . . by filing and writing to the defendant WA Supreme Court[.]"). His efforts also included a "formal petition" through counsel to WSBA regarding his request. In response, the WSBA and Justice Stephens reviewed their own records and the information submitted by Langadinos.

Exercising its inherent judicial power, the State Supreme Court enforced its attorney admission rules when Justice Stephens and the WSBA determined that Langadinos could not avail himself of the diploma privilege under the circumstances. In her email to Langadinos, Justice Stephens found that an exemption from the rules was unwarranted, stating "[t]he balance of interests counsels against further modification of the court's order, though I appreciate this is disappointing to you, and your circumstances are unfortunate." Dkt. No. 1 at 51. Later, the WSBA's Associate Director of Litigation reiterated the message that Langadinos's request for the diploma privilege had been denied. *Id.* at 75. In other words, the State Supreme Court responded to Langadinos's judicial inquiry with a declaration of the state of "liabilities as they stood on present or past facts and under laws supposed already to exist." *Feldman*, 460 U.S. at 479.

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS - 12

This case presents a judicial decision as contemplated by *Feldman*. The Sixth Circuit reached a similar conclusion in *Raymond v. Moyer*, 501 F.3d 548 (2007). Although not binding, the Court finds *Raymond* persuasive on the subject. In *Raymond,* an applicant claimed he was denied admission to the Ohio bar without any explanation. *Id.* at 549. He filed a "motion for clarification and/or reconsideration of his application," but his request was denied, again with no explanation. *Id.* He sued in federal court alleging the Ohio Supreme Court violated his constitutional rights. The Sixth Circuit, however, dismissed the applicant's claims under the *Rooker-Feldman* doctrine because the Ohio Supreme Court's decision was judicial in nature since it had original jurisdiction over bar admissions and the court found the applications lacking as measured against the existing bar admission rules. *Id.* at 552-53.

Similarly, in *In re Summers*, a case discussed extensively in *Feldman* and *Raymond*, the Supreme Court held that the Illinois Supreme Court's refusal to admit a bar applicant was judicial in nature even though "no entry was placed by the Clerk in the file, on a docket, or in a judgment roll," and the Illinois Supreme Court issued its decision via a letter to the applicant, like Justice Stephen's email, without disclosing its reasoning. *In re Summers*, 325 U.S. 561, 567 n.8 (1945).

The cases Langadinos cites in opposition are not helpful, as they deal with judicial immunity from suit, not whether decisions are judicial in nature under the *Rooker-Feldman* doctrine. Dkt. No. 14 at 14-15 (citing *Maestri v. Jukoksky*, 860 F.2d 50, 52-53 (2d Cir. 1988); *Brewer v. Blackwell*, 692 F.2d 387, 397 (5th Cir. 1982);

*Sup. Ct. of Virginia v. Consumer's Union of the United States*, 446 U.S. 719, 731-734 (1980); and *Georgevich v. Strauss*, 772 F.2d 1078, 1087-88 (3d. Cir. 1985)).

Langadinos's other arguments do not warrant a different outcome. He points out that "no case was ever filed or appealed in the Washington State Court system." Dkt. No. 14 at 16. But "'the form of the proceeding is not significant. It is the nature and effect which is controlling.'" *Feldman,* 460 U.S. at 482 (quoting *In re Summers*, 325 U.S. at 567). Thus, the fact that it was an email from Justice Stephens, followed by emails and phone calls from the WSBA, instead of a courtroom and judicial order conveying the denial, does not change the end judgment.

Langadinos also claims Justice Stephens was not "made aware" of all the facts. Dkt. No. 14 at 13. This argument, however, speaks to the quality of the decision reached, not whether it was judicial in nature. Moreover, Langadinos's argument that he was afforded insufficient process does not overcome the preclusive effect of a state judicial decision even if, in his view, it was misguided. *See Raymond*, 501 F.3d at 553 (applying the *Rooker-Feldman* doctrine to dismiss a case even though the state supreme court did not provide the bar admission applicant "a hearing, an opportunity to response to any alleged deficiencies to [their] application, or even a reason for denying [their] application.").

Accordingly, the Court finds that Langadinos's case is a forbidden de facto appeal.

### 3.2.2    The relief Langadinos seeks is inextricably intertwined with the denial of diploma privilege.

Next, the Court must determine what issues are "inextricably intertwined" with Langadinos's forbidden appeal. "'Claims are inextricably intertwined if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Hooper,* 56 F.4th at 624-25 (quoting *Cooper v. Ramos,* 704 F.3d 772, 779 (9th Cir. 2012)). "Cases involving bar admission rules . . . fall in this category." *Noel,* 341 F.3d at 1158. With these principles in mind, the Court turns to the relief requested by Langadinos.

Langadinos alleges seven causes of action. In the first two, he seeks an injunction granting him the diploma privilege and a declaratory judgment settling the dispute "as to the validity of . . . [Langadinos's] right to be awarded diploma privilege." Dkt. No. 1 at 13-17. Langadinos asserts a Section 1983 claim as his fifth cause of action, alleging that Fourteenth Amendment procedural due process rights were violated when the State Supreme Court and WSBA refused to modify the terms of the diploma privilege for him. *Id.* at 21. These claims are unmistakably intertwined with Langadinos's de facto appeal since granting the relief requested would reverse the State Supreme Court's decision regarding the diploma privilege. It is immaterial that Langadinos frames part of his federal complaint as a constitutional challenge to the state court's actions because, at bottom, he still alleges legal error or errors by the state court and reversal as his remedy. *Cooper*, 704 F.3d at 781.

Langadinos's remaining causes of action are a different story. He also brings federal and state disability discrimination claims (causes of action three, four and six) and the tort of outrage (cause of action seven). While these claims are perhaps *intertwined* with the state court decision "[i]n an ordinary language sense," they fall outside the "specialized meaning" of "inextricably intertwined" for *Rooker-Feldman* purposes. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004).

The Ninth Circuit analyzed this distinction in *Kougasian*. There, a widow filed two unsuccessful state court lawsuits against the operator of a ski area following her husband's death. *Id.* at 1137-39. She later filed a federal lawsuit under diversity jurisdiction and asserted seven causes of action, including extrinsic fraud on the state court, wrongful death, premises liability, and intentional and negligent infliction of emotional distress. *Id.* at 1139. The Ninth Circuit held that the *Rooker-Feldman* doctrine did not deprive the district court of jurisdiction, explaining as follows:

> [The plaintiff] does not seek to set aside the judgments of the [state court] based on alleged legal errors by those courts. Rather, she seeks to set aside these judgments based on the alleged extrinsic fraud by defendants that produced those judgments. Nor does [the plaintiff] seek damages based on any alleged legal error by the state courts. Rather, she seeks damages based on the alleged wrongful behavior of the defendants.

*Id.* at 1139. The Ninth Circuit held that, even in the absence of the plaintiff's fraud claims, *Rooker-Feldman* still would not bar her other causes of action because she "does not allege legal errors by the state courts; rather, she alleges wrongful acts by the defendants, such as negligently designing the ski run and negligently placing or failing to remove the rock." *Id.* at 1142.

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS - 16

Like the plaintiff in *Kougasian,* Langadinos seeks redress for allegedly illegal acts or omissions, separate from the state court decision about the diploma privilege. The harm stems from his claim that the defendants discriminated against him by failing to "render th[ier] facilities readily accessible and usable to individuals with [his] disabilities" and that their conduct otherwise constituted the intentional inflection of emotional distress. Dkt. No. 1 ¶¶ 75, 109. Thus, Langadinos's claims for disability discrimination and outrage are not barred by the *Rooker-Feldman* doctrine.

### 3.3   Langadinos's disability discrimination claims.

Langadinos alleges disability discrimination against the State Supreme Court, WSBA, the WSBA Board of Governors, and WSBA employees Lisa Amatangel and Julie Shankland for violating Title II of the Americans with Disabilities Act, the Rehabilitation Act, and WLAD.

Title II of the ADA and Section 504 of the Rehabilitation Act both prohibit disability discrimination. To state a claim of disability discrimination under Title II of the ADA, Langadinos must show that "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021) (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001)). The

elements of a prima facie case under Section 504 are the same, with the added "requirement that the plaintiff prove that 'the program receives federal financial assistance.'" *Id.* (quoting *Duvall,* 260 F.3d at 1135). The prima facie elements of a public accommodation discrimination claim under the WLAD are similar: the plaintiff must show that "(1) they have a disability recognized under the statute; (2) the defendant's business or establishment is a place of public accommodation; (3) they were discriminated against by receiving treatment that was not comparable to the level of designated services provided to individuals without disabilities by or at the place of public accommodation; and, (4) the disability was a substantial factor causing the discrimination.*" Fell v. Spokane Transit Auth.*, 911 P.2d 1319, 1328 (Wash. 1996); *see also Duvall,* 260 F.3d at 1135. Because the elements of these claims do not differ in any relevant respect, they may be analyzed together. *Duvall*, 260 F.3d at 1135.

At its most basic level, Langadinos's theory of discrimination is that Defendants failed to accommodate his disability by offering an ADA-compliant website and by failing to honor his reasonable accommodation request for a hardcopy of the bar application.

### 3.3.1    Langadinos fails to state a disability discrimination claim against the Washington State Supreme Court.

The State Supreme Court argues that Langadinos has failed to allege sufficient facts to state a plausible discrimination claim. They have a point. Langadinos's disability discrimination claims against the State Supreme Court fail for the simple reason that the court is not the party allegedly responsible for the

discrimination. On this score, Langadinos places the WSBA's website at the center of his claims, *see, e.g.*, Dkt. No. 1 ¶¶ 24, 28, 37, and identifies the WSBA, not the State Supreme Court, as the recipient of his reasonable accommodation request; Dkt. No. 1 ¶¶ 28, 30-31; Dkt. No. 1 at 29. This dooms his disability discrimination claim against the State Supreme Court because he has failed to allege factual details showing in any way that the State Supreme Court was responsible for the disability discrimination he allegedly suffered.

Accordingly, Langadinos has failed to state a plausible ADA, WLAD, or Rehabilitation Act claim against the State Supreme Court.

### 3.3.2 Langadinos may proceed on parts of his disability discrimination claim against the WSBA.

The WSBA also argues that Langadinos fails to state a claim of disability discrimination because he was not otherwise qualified to participate in the diploma privilege option and because he "never notified the WSBA of the disability alleged in his complaint or requested that the WSBA modify anything to accommodate *that* disability." Dkt. No. 11 at 19 (emphasis in original).

The WSBA takes an unnecessarily cabined view of Langadinos's disability discrimination claim, focusing narrowly on whether he qualifies for the diploma privilege, his failed attempts to register for the July 2020 bar exam, and the nature of his disability. But when a plaintiff proceeds pro se—as Langadinos does here—courts must "'construe the pleadings liberally' and 'afford the petitioner the benefit of any doubt.'" *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (internal quotation omitted). Langadinos alleges the WSBA failed to provide a reasonable

accommodation for his disabilities in the form of an accessible website and hardcopy bar application—this is enough to state a claim. *See Duvall,* 260 F.3d at 1140 ("[Plaintiff] provided sufficient evidence to create a triable issue as to whether [the defendants] . . . had notice of his need for the accommodation involved and that they failed despite repeated requests to take the necessary action."). His claims—and the WSBA's obligations in this arena—do not turn on whether he was eligible for the diploma privilege or registered for the July 2020 bar exam. Moreover, any dispute about the nature of Langadinos's claimed disabilities and what information was conveyed to the WSBA go to the merits of his claim and cannot be resolved at this early stage of the case.

Several caveats apply, however. Langadinos does not allege that the WSBA is a "program [that] receives federal financial assistance," which is a prerequisite for a Rehabilitation Act claim. Therefore, his Rehabilitation Act claim must be dismissed for failure to state a claim.

Second, neither the ADA, the Rehabilitation Act, nor the WLAD allow Langadinos to sue WSBA employees in their individual capacities for public accommodation discrimination. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("individual defendants cannot be held personally liable for violations of the ADA"); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding plaintiff cannot sue state officials in their individual capacities to vindicate rights created by the ADA or the Rehabilitation Act); *Doscher v. Timberland Reg'l Libr.*, No. 3:22-CV-05340-RJB, 2022 WL 4534403, at *5 (W.D. Wash. Sept. 28, 2022) (holding plaintiff could not bring a WLAD public accommodation claim against

individually named defendants because "the WLAD does not include individuals in its definition of 'place of public accommodation.'"); *Matthews v. NCAA*, 179 F. Supp. 2d 1209, 1229 (E.D. Wash. 2001) (evaluating whether the defendant meets "the definition for a place of public accommodation").

Thus, the Court dismisses Langadinos's ADA, Rehabilitation Act, and WLAD claims against Shankland and Amatangel.

In the end, what remains is Langadinos's ADA and WLAD public accommodation discrimination claims against the WSBA.[3]

## 3.4    Langadinos fails to state a claim for the intentional infliction of emotional distress.

Langadinos alleges that Defendants' conduct was outrageous because they gave him the "run around" and lied to him about various things. Dkt. No. 1 at 24-25. Under Washington law, a claim for the intentional infliction of emotional distress— sometimes called the tort of outrage—requires the proof of three elements: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash. 1989) (internal citations omitted). "The conduct in question must be *so outrageous in character, and so extreme in degree, as*

---

[3] The WSBA argues that it is a "judicial agent," Dkt. No. 11 at 17, and thus that its shares in the State Supreme Court's Eleventh Amendment immunity. But the WSBA does not discuss the Ninth Circuit's recent opinions in *Crowe v. Oregon State Bar*, 989 F.3d 714, 730 (9th Cir. 2021) and *Kohn v. State Bar of California*, 87 F.4th 1021, 1037 (9th Cir. 2023). Because the issue of immunity has not been fully briefed in light of *Crowe* and *Kohn,* this Court is unable to make a definitive determination at this early stage of the case, so it would be unwise to comment further.

*to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community*." *Id.* (emphasis in original) (citations omitted). "[I]t is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Id.* at 1013 (citation omitted). When conduct offered to establish outrage is not extreme, "a court must withhold the case from a jury notwithstanding proof of intense emotional suffering." *Brower v. Ackerley,* 943 P.2d 1141, 1149 (1997).

Even taken as true, Langadinos's claims do not meet the high standard necessary to support an outrage claim. His claim for the intentional infliction of emotional distress is therefore dismissed as to all defendants.

### 3.5 The Court quashes service of process as to WSBA Defendants and grants Langadinos 21 days to effect proper service on all WSBA Defendants.

WSBA moves to dismiss Langadinos's case under Fed. R. Civ. P. 12(b)(5) for failing to properly serve it with legal process. Dkt. No. 11 at 13-14. Specifically, WSBA argues because Langadinos filed "blank proofs of service," he failed to comply with Fed. R. Civ. P. 4(l)(1). In his response, Langadinos submits affidavits of service showing that a process server attempted to serve WSBA with process by delivering copies of the complaint and summons to the WSBA Mail Coordinator "A. Tung" on May 23, 2023. Dkt. No. 14-1 at 4. But according to WSBA Defendants, serving the "mail and print services coordinator at the WSBA office" is insufficient under Fed. R. Civ. P. 4(j)(2). The Court agrees.

When a defendant shows insufficient service of process, a "district court has discretion to dismiss an action or to quash service." *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006). "[S]ervice will ordinarily be quashed and the action preserved where 'there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly,'" *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1354, at 585 (1969)). Further, "[w]here it appears that effective service can be made and there is no unfair prejudice to the defendant, quashing service rather than dismissing the action, and leaving the plaintiff free to effect proper service, is the appropriate course." *Dillard v. Red Canoe Fed. Credit Union*, No. C14-1782JLR, 2015 WL 1782083, at *3 (W.D. Wash. Apr. 17, 2015).

Accordingly, the Court will exercise its discretion and treat WSBA's Rule 12(b)(5) motion as one to quash service of process rather than dismiss. The court will quash service as to WSBA and grant Langadinos an additional 21 days from the date of this order to accomplish proper service of process pursuant to Fed. R. Civ. P. 4(j)(2). If Langadinos fails to properly serve WSBA within 21 days, WSBA may renew its Rule 12(b)(5) motion to dismiss.

## 3.6    Leave to amend is granted.

Ordinarily, when a court dismisses a pro se plaintiff's complaint for failure to state a claim, it must grant leave to amend even when no request to amend is made. *Yagman v. Garcetti*, 852 F.3d 966, 976 (9th Cir. 2022). But "[a]n action may be dismissed for lack of subject matter jurisdiction, without leave to amend, when it is clear the jurisdiction deficiency cannot be cured by amendment." *Johnson v. Biden*,

ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS - 23

No. C21-466 MJP, 2021 WL 1894012, at *1 (W.D. Wash. May 11, 2021) (quoting *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980)). And leave to amend may be denied where amendment would be futile. *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002).

The Court concludes that leave to amend Langadinos's causes of action for a preliminary injunction, declaratory relief, and Section 1983 due process would be futile because those claims seeking the diploma privilege are barred by the *Rooker-Feldman* doctrine. Similarly, no amendment could cure Langadinos's public accommodation discrimination claims against the individually named defendants. Therefore, these claims are dismissed with prejudice and without leave to amend.

As to Langadinos other claims against the State Supreme Court (i.e., his public accommodation claims under the ADA, WLAD, and Rehabilitation Act), the Court declines to grant him leave to amend his complaint without first requiring him to comply with Local Rule 15, which provides that a "party who moves for leave to amend a pleading . . . must attach a copy of the proposed amended pleading as an exhibit to the motion or stipulated motion," and allow briefing both in support of and opposition to amendment. Langadinos may also address his now-dismissed Rehabilitation Act claim against the WSBA and his intentional infliction of emotional distress claim against all defendants.

Given the problems identified with some of Langadinos's claims, perhaps amendment is futile, but the Court will provide him a final opportunity to allege a plausible case against the defendants. Langadinos must move to amend his complaint by no later than 30 days from the date of this order.

In his response to the WSBA's and the State Supreme Court's motions to dismiss, Langadinos styles his response as a "preliminary" and "first opposition" and requests leave to submit a revised version after his scheduled surgery. The Local Civil Rules, however, do not entitle a litigant to more than one opposition brief. Therefore, the Court denies Langadinos's request.

Langadinos also filed a document styled as a notice of intent to file a surreply. Because Langadinos did not file any additional documents, the Court construes this "notice" as Langadinos's surreply and considers his request to strike "irrelevant personal attacks on how many prior lawsuits he filed[.]" In its motion to dismiss, the WSBA includes a "facts" section discussing Langadinos's prior lawsuits. Dkt. No. 11 at 5-8. The Court agrees these references to other suits are neither pertinent nor appropriate for a motion to dismiss. Accordingly, the Court STRIKES this material under Local Civil Rule 7(g) and did not consider it in its above analysis.

## 4. CONCLUSION

In sum, the Court GRANTS in part and DENIES in part the WSBA's and State Supreme Court's motion to dismiss, and orders as follows:

- Langadinos's request for an injunction granting him the diploma privilege and a declaratory judgment affirming his right to be awarded diploma privilege are DENIED with prejudice.

- Langadinos's Section 1983 claim against the State Supreme Court and WSBA, alleging that his Fourteenth Amendment procedural due process rights were violated, is DISMISSED with prejudice.

- Langadinos's disability discrimination claims against individual Defendants Lisa Amatangel and Julie Shankland are DISMISSED with prejudice.

- Langadinos's may seek leave to amend under Rule 15 no later than 30 days from the date of this order, for his public accommodation claims under the ADA, WLAD, and Rehabilitation Act against the State Supreme Court, his Rehabilitation Act claim against the WSBA, and his intentional infliction of emotional distress claim against all defendants.

- Langadinos must properly serve WSBA and file a proof of service within 21 days of the date of this order.

Dated this 15th day of March, 2024.

Jamal N. Whitehead
United States District Judge

# Exhibit 2

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREGORY LANGADINOS,

          Plaintiff,

    v.

WASHINGTON STATE BAR
ASSOCIATION, WASHINGTON
STATE BAR ASSOCIATION BOARD
OF GOVERNORS, LISA
AMATANGEL, Associate Director;
Litigation and Internal Operations,
JULIE SHANKLAND, Coordinator;
ADA/504 WSBA, WASHINGTON
STATE SUPREME COURT,

          Defendants.

CASE NO. 2:23-cv-250

ORDER DENYING MOTION TO
AMEND

## 1. INTRODUCTION

Proceeding pro se, Plaintiff Gregory Langadinos moves for leave to file an

amended complaint. Dkt. No. 47. Because his proposed amendments are futile and

exceed the scope of amendment previously permitted,[1] the motion is DENIED.

---

[1] In its prior order, the Court also allowed Langadinos to proceed on his Washington
Law Against Discrimination (WLAD) claim against the WSBA, finding that the

ORDER DENYING MOTION TO AMEND - 1

1  Langadinos may proceed only on the remaining claim in his original complaint—his

2  ADA public accommodation discrimination claim against the WSBA.

## 2. BACKGROUND

The Court recounts the facts alleged in Langadinos's his original complaint.

Langadinos, a California resident, earned a juris doctor degree from the

Appalachian School of Law on May 8, 2004.[2] Dkt. No. 1 ¶¶ 6, 36; *see also* Dkt. No. 1

at 100. Langadinos alleges that on consecutive days from March 3 to March 6, 2020,

he "repeatedly attempted to apply over the internet to register" and pay for the July

2020 bar exam on the WSBA's website but that he encountered difficulties that

prevented him from registering. *Id.* ¶ 24–25. Langadinos, who has "thyroid eye

disease, exophthalmos" and a "neurogenic bladder disorder," claims these conditions

prevented him "from staring at a computer screen for an extended period of time."

*Id.* He claims the WSBA's website was non-ADA compliant because it did not offer

"Job Access with Speech" or "other computer applications for visually impaired

applicants." *Id.* ¶ 5. Langadinos estimates that he called the WSBA about eight

times to report that its website "was not working properly." *Id.* ¶ 28.

On March 27, 2020, he mailed and faxed a letter to the WSBA's Admissions

Manager, requesting an accommodation for his disabilities. *Id.* ¶ 30. In his letter,

WSBA failed to adequately argue its case for Eleventh Amendment immunity. Dkt.
No. 38 at 21 n.3. Because in its response to Langadinos's motion to amend, the
WSBA provides the relevant standard and the Court agrees immunity applies, it
dismisses Langadinos's WLAD claim against the WSBA as barred by the Eleventh
Amendment. *See supra* Section 3.3.2.

[2] The complaint is silent about whether Langadinos has been admitted to a state
bar since his graduation or otherwise engaged in the practice of law. *See generally*
Dkt. No. 1.

ORDER DENYING MOTION TO AMEND - 2

Langadinos explained that his medical treatment and "neurogenic bladder disorder requiring [him] to catheterize and suffer pain throughout the day[,]" made it "very inconvenient" to spend multiple hours a day trying "to access the web site without any progress" and, as a reasonable accommodation, he requested "to receive a hard copy application" for the July 2020 bar exam. Dkt No. 1 at 29-31. The WSBA did not respond to Langadinos's letter. *Id.* ¶ 31.

On June 12, 2020, the Washington Supreme Court issued an order modifying Washington Admission and Practice Rules (APR) 3 and 4. The order granted applicants the option of receiving a "diploma privilege" to practice law in Washington without taking the bar exam, so long as they were already registered to take the July or September 2020 bar examination and had received a Juris Doctorate from an ABA accredited law school. *Id.* ¶ 33; *see also id.* at 53–54.

Because Langadinos was not registered to take the 2020 bar examination, he was ineligible for the diploma privilege. Langadinos contacted the WSBA and the State Supreme Court about his failed attempts to register. Specifically, "[d]uring the week of June 15, 2020," Langadinos contacted Lisa Armstrong, the State Supreme Court's Administrative Coordinator. Dkt. No. 1 at 70 ¶ 9. At some point, he also wrote the State Supreme Court. *See id.* ¶ 53. On June 25, 2020, Chief Justice Debra Stephens emailed Langadinos. She began by saying, "[t]hank you for your email and letter requesting an expansion of the Diploma Privilege to your circumstances . . . ." *Id.* at 50. And ended by saying, "[t]he balance of interests counsels against further modification of the court's order, though I appreciate this is disappointing to you, and your circumstances are unfortunate." *Id.* at 51.

1

2

Despite attempts by Langadinos to change this outcome, WSBA maintained

3

that Langadinos was ineligible for diploma privilege under State Supreme Court's

4

order. *Id.* at 75. Langadinos also contacted the Clerk's Office of the State Supreme

5

Court on September 1, 2020. Dkt. No. 1 at 90. In response, a clerk wrote that "by

6

court rule, the administration of the bar examination is delegated to the WSBA"

7

and "[t]here is no process for appealing such individual determinations [about

accommodations] to the Supreme Court." *Id.* at 89.

8

9

On February 23, 2023, nearly three years later, Langadinos filed a complaint,

10

alleging WSBA and the State Supreme Court violated Title II of the Americans with

11

Disabilities Act (ADA), the Rehabilitation Act of 1973, the Washington Law Against

12

Discrimination (WLAD), and the Fourteenth Amendment. *Id.* ¶¶ 48–105. He sought

13

an injunction ordering the WSBA and State Supreme Court to grant him diploma

14

privilege as well as a declaratory judgment affirming his right to be awarded

15

diploma privilege. Langadinos also alleged the state-law claim of intentional

16

infliction of emotional distress against all Defendants. *Id.* ¶¶ 106- 111. Finally, he

17

raised ADA And WLAD claims against individuals Lisa Amatangel and Julie

Shankland. Defendants moved to dismiss all claims. Dkt. Nos. 10, 11.

18

19

In a detailed order, the Court granted in part and denied in part Defendants'

20

motions to dismiss and granted Langadinos limited leave to amend. Dkt. No. 38 at

25–26. Specifically, the Court:

21

22

(1) denied with prejudice Langadinos's request for an injunction granting him

diploma privilege and a declaratory judgment affirming his right to be

23

awarded diploma privilege based on the *Rooker-Feldman* doctrine;

(2) dismissed with prejudice Langadinos's Section 1983 Fourteenth
Amendment claims against the Washington Supreme Court and WSBA as
barred by the *Rooker-Feldman* doctrine;

(3) dismissed with prejudice all claims against individual defendants Lisa
Amatangel and Julie Shankland because neither the ADA nor WLAD
allows plaintiffs to sue individuals for public accommodation
discrimination;

(4) allowed Langadinos to proceed with his ADA and WLAD public
accommodation discrimination claims against WSBA. *Id.*

The Court also granted Langadinos "limited leave" to file a proposed
amended complaint, re-pleading "his public accommodation claims under the ADA,
WLAD, and Rehabilitation Act against the State Supreme Court, his Rehabilitation
Act claim against the WSBA, and his intentional infliction of emotional distress
claim against all defendants." *Id.* The Court cautioned that this would be
Langadinos's "final opportunity to allege a plausible case against the defendants."
*Id.* at 24.

Rather than focusing on the deficiencies identified in the Court's order,
Langadinos filed a proposed amended complaint that reasserts dismissed claims,
adds new theories, and attempts to join new parties. Dkt. No. 48 at 20–54.

## 3.  DISCUSSION

### 3.1  Legal standard.

Under Rule 15(a), leave to amend must be given freely as required by justice.
*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). "This

1    policy is 'to be applied with extreme liberality.'" *Neaman v. Wash. State Dep't of*

2    *Corr.*, No. C24-5176 BHS, 2024 WL 3845710, at *1 (W.D. Wash. 2024) (quoting

3    *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)). Courts

4    consider five factors when determining whether to grant leave to amend under Rule

5    15: "bad faith, undue delay, prejudice to the opposing party, futility of amendment,

6    and whether the [party] has previously amended [its pleadings]." *United States v.*

7    *Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Of these factors, "prejudice to

8    the opposing party carries the greatest weight." *Neaman*, No. C24-5176 BHS, 2024

9    WL 3845710, at *1.

10   **3.2    Several claims have already been dismissed with prejudice (Counts**
11   **9, 10, 12).**

12       The Court previously dismissed with prejudice Langadinos's claims for

13   injunctive and declaratory relief seeking diploma privilege and his Section 1983

14   claims. Dkt. No. 38 at 25. In short, the Court held that Langadinos sought a de facto

15   appeal of the State Supreme Court's decision not to admit him, and thus, that such

16   claims were barred by the *Rooker-Feldman* doctrine. Dkt. No. 38 at 15. The *Rooker-*

17   *Feldman* doctrine "stands for the relatively straightforward principle that federal

18   district courts do not have jurisdiction to hear de facto appeals from state-court

19   judgments." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010). The Court

20   explained its analysis at length in its prior order and declines to repeat it here.

21       Langadinos's proposed complaint improperly reasserts these claims as

22   Counts Nine, Ten, and Twelve, but these claims remained barred by *Rooker-*

23   *Feldman*. Langadinos, apparently recognizing this obstacle, urges the Court to

reconsider its prior ruling based on *Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021), which he characterizes as "powerful and precedential." Dkt. No. 47-1 at 2–3, 12; Dkt. No. 59 at 8–11. But *Behr*, an Eleventh Circuit case, is not controlling authority in this Circuit. And in any event, the *Behr* court's articulation of *Rooker-Feldman* as a "narrow doctrine" is consistent with the Supreme Court's decision in *Exxon Mobil*, which this Court expressly relied on in its prior order. Dkt. No. 38 at 8. The Court correctly applied the narrow interpretation of *Rooker-Feldman* in its original ruling, and *Behr* presents no compelling reason to revisit that analysis.

In Count Nine, Langdinos attempts to replead his procedural due process claim against the WSBA individual Defendants. But this is also inextricably intertwined with the relief already dismissed under the *Rooker-Feldman* doctrine, and thus allowing this proposed amendment would be futile. *See* Dkt. No. 38 at 15.

The attempted repackaging of these claims under the All Writs Act, 28 U.S.C. § 1651, is just as unavailing. The Act does not create a cause of action; it only addresses the court's power. *Cofield v. United States*, 64 F. Supp. 3d 206, 212 (D.D.C. 2014).

The Relation Back Doctrine that Langadinos invokes in his reply brief does not save these claims either. Rule 15(c) addresses whether an amended pleading relates back to the date of the original pleading for statute of limitations purposes. Fed. R. Civ. P. 15(c). It does not revive claims that have been dismissed with prejudice or overcome jurisdictional barriers like the *Rooker-Feldman* doctrine.

1

2

**3.3    Eleventh Amendment immunity bars Langadinos's state-law claims against the State Supreme Court, WSBA, and the individual Defendants acting in their official capacities (Counts 3, 4, 5, 11).**

3

4    Langadinos's state-law claims against the State Supreme Court, WSBA, and

5    the individual defendants in their official capacities (Counts Three, Four, Five, and

6    Eleven) are barred by the Eleventh Amendment. And his attempt to add the State

7    of Washington as a defendant, Dkt. No. 48 at 2, 13, would be futile for the same

8    reason.

9    The Eleventh Amendment prohibits suits against a state by its own citizens

10    or citizens of other states in federal court. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521

11    U.S. 261, 267 (1997). This immunity extends to agencies of the state, including the

12    State Supreme Court. *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 926

13    (9th Cir. 2017); *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110

14    (9th Cir.1987) (holding that state courts are arms of the state for Eleventh

15    Amendment purposes). Thus, Langadinos's claims against the State fail.

16    Eleventh Amendment immunity also extends to the WSBA. *Crowe v. Oregon*

17    *State Bar*, 112 F.4th 1218, 1230 (9th Cir. 2024) ("This immunity extends not just to

18    suits in which the state itself is a named party but also to those against an 'arm of

19    the state.'") (cleaned up). The test for whether an entity is an arm of the state

20    considers three factors: "(1) the [s]tate's intent as to the status of the entity,

21    including the functions performed by the entity; (2) the [s]tate's control over the

22    entity; and (3) the entity's overall effects on the state treasury." *Id.* (quoting *Kohn v.*

23    *State of California*, 87 F.4th 1021, 1030 (9th Cir. 2023) (en banc)).

1    The WSBA qualifies as an arm of the state, as Washington formally

2 established the WSBA "as a state agency by legislative enactment." *See Beauregard*

3 *v. Washington State Bar Ass'n*, 480 P.3d 410, 415 (2021)*; see also Eugster v.*

4 *Washington State Bar Ass'n.*, No. CV 09-357-SMM, 2010 WL 2926237, at *8 (E.D.

5 Wash. July 23, 2010), *aff'd sub nom. Eugster v. Washington State Bar Ass'n*, 474 F.

6 App'x 624 (9th Cir. 2012) (finding that the WSBA is an arm of the state for purpose

7 of Eleventh Amendment immunity). So Eleventh Amendment immunity bars

8 Langadinos's state-law claims against the State Supreme Court and WSBA.

9    Langadinos's argument regarding Washington House Committee on Civil

10 Rights & Judiciary Legislation (HB 1788 - 2019-20), which he claims sought to

11 "repeal existence of defendant WSBA," does not alter this analysis. Even if the

12 legislature considered reorganizing or dissolving the WSBA, this would not change

13 its current status as a state agency for Eleventh Amendment purposes. The

14 structure and governance of the state bar remain subject to the State Supreme

15 Court's authority. Therefore, Eleventh Amendment immunity bars Langadinos's

16 state-law claims against the State Supreme Court and WSBA.

17    Claims against state officials in their official capacities are effectively claims

18 against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("We emphasized that

19 official-capacity suits 'generally represent only another way of pleading an action

20 against an entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473

21 U.S. 159, 165 (1985)); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir.

22 2010) ("[The court] treat[s] [the plaintiff's] suit against state officials in their official

23 capacities as a suit against the state of California"). While *Ex parte Young*, 209 U.S.

123 (1908), permits suits against state officials for prospective injunctive relief, that exception does not apply here because Langadinos's requests for injunctive relief have been dismissed with prejudice.

Langadinos's contention that Congress abrogated the states' Eleventh Amendment immunity for ADA claims is only partially correct. Congress validly abrogated state immunity for ADA Title II claims, but only for conduct that actually violates the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). But Langadinos's state law claims—WLAD, outrage, and fraud—are not subject to this abrogation. These claims remain barred by the Eleventh Amendment.

Accordingly, Langadinos's claims against the individual Defendants Julie Shankland, Lisa Amatangle, and Jon Dawson, in their official capacity fail just like his claims against the State, the State Supreme Court, and the WSBA.

The Eleventh Amendment, however, does not "bar claims for damages against state officials in the *personal* capacities." *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (emphasis in original). But the Court has already held that the WLAD does not allow Langadinos to sue WSBA employees in their individual capacities for public accommodation discrimination. *See* Dkt. No. 38 at 20-21 (citing *Doscher v. Timberland Reg'l Libr.*, No. 3:22-CV-05340-RJB, 2022 WL 4534403, at *5 (W.D. Wash. Sept. 28, 2022) (holding plaintiff could not bring a WLAD public accommodation clam against individually named defendants because "WLAD does not include individuals in its definition of 'place of public accommodation.")). As to Langadinos's remaining state-law claims—outrage and fraud—he does not plead

sufficient facts to state claims against Shankland, Amatangle, and Dawson.[3]

Accordingly, Langadinos's amended claims cannot be allowed to proceed as it would be futile.

### 3.4    Langadinos fails to state federal discrimination claims.

#### 3.4.1    Langadinos's ADA claim against the Washington Supreme Court fails (Count 1).

The Court previously dismissed Langadinos's ADA claim against the Washington Supreme Court because he alleged no facts showing the court was responsible for the discrimination. Dkt. No. 38 at 18-19. His proposed amended complaint does nothing to cure this defect. Langadinos still does not identify the Washington Supreme Court as the recipient of his accommodation requests or allege that the court controlled the WSBA's website. In fact, he admits that "the denial of Title II ADA Accommodations . . . WERE NEVER BEFORE JUDGE DEBORAH STEPHENS." Dkt. No. 48 at 10.

His conclusory assertion in his reply brief that the court "owned, and operated, directed, or controlled the WSBA's web site," Dkt. No. 59 at 11, contradicts his own earlier allegation that "the administration of the bar examination is delegated to the WSBA" and "[t]here is no process for appealing such

---

[3] In the proposed amended complaint, Langadinos alleges that Shankland, Amatangel, and Dawson acted with "[e]vil [m]otive" to discriminate against him because of his disability and Greek ethnicity. Dkt. No. 48 at 2-3. He also alleges that Amatangel and Shankland "created falsehoods" about their job titles and conspired with Dawson to fail to accommodate him. *Id.* at 5, 8. These allegations are merely conclusory and without a factual basis. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) requiring factual allegations "enough to raise a right to relief above the speculative level")

ORDER DENYING MOTION TO AMEND - 11

1    individual determinations [about accommodations] to the Supreme Court." Dkt. No.

2    1 at 89.

3        Accordingly, Langadinos's ADA claim against the State Supreme Court

4    remains deficient, and amendment would be futile.

5        **3.4.2    Langadinos's Rehabilitation Act claims also fail (Counts 2, 6).**

6        The Rehabilitation Act applies only to programs receiving federal financial

7    assistance. 29 U.S.C. § 794(a). Langadinos's assertion that the defendants "are all

8    recipients of federal funds," Dkt. No. 48 at 24, is conclusory and contradicted by

9    evidence that the WSBA receives no federal funding. Indeed, the WSBA has

10   presented evidence that it receives no federal funding, which the Court may

11   properly consider under judicial notice. *See* Governor Manual, WSBA (Updated

12   Mar. 17, 2025), available at https://www.wsba.org/about-wsba/who-we-are/board-of-

13   governors/Governor-Manual; Dkt. No. 50 at 16-17; *see also Reyn's Pasta Bella, LLC

14   v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (judicial notice may be taken

15   "of court filings and other matters of public record."). According to this source, the

16   WSBA is funded "entirely by mandatory membership licensing fees and various

17   user fees, including continuing legal education (CLE) revenues, bar examination

18   fees, practice section dues and Washington State Bar News advertising revenues."

19   *Id.*; *see Skilstaf, Inc. v. CVS Caremark Corp.,* 669 F3d 1005, 1016, n.9 (9th Cir.

20   2012) ("Although, as a general rule, a district court may not consider materials

21   beyond the pleadings in ruling on a Rule 12(b)(6) motion, one exception to this

22   general rule is that a 'court may take judicial notice of matters of public record

23

without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute.'" (quoting *Intri–Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir.2007)).

And Langadinos's Section 508 Rehabilitation Act claim (Count Six) fails as a matter of law because that provision applies only to federal agencies. 29 U.S.C. § 794d ("Section 508 . . . applies to all Federal agencies . . . ."); *see* Dkt. No. 53 at 11. Neither the State Supreme Court nor the WSBA is a federal agency.

Thus, Langadinos's Rehabilitation Act claims (Counts Two and Six) remain deficient, and amendment would be futile.

### 3.4.3    Langadinos's Title VI and Section 1981 claims fail (Counts 7, 8).

Langadinos's proposed Title VI and § 1981 claims (Counts Seven and Eight) exceed the scope of amendment the Court permitted. Dkt. No. 38 at 25-26. Even if considered, these claims are facially implausible.

Langadinos alleges that defendants discriminated against him because he is a "WHITE MALE" who "looks like a member of the Italian Mafia, and isn't African-American." Dkt. No. 48 at 35. He provides no factual allegations to support this claim of racial discrimination. *Twombly*, 550 U.S. at 555. Moreover, Title VI applies only to programs receiving federal funding, which the WSBA is not.

In his reply, Langadinos asserts that his Title VI and § 1981 claims are supported by allegations regarding WSBA Deputy Director Dua Abudiab's alleged anti-Israel statements. Dkt. No. 59 at 3-5. But these allegations do not appear in his proposed amended complaint, and even if they did, they would not establish that

Langadinos personally suffered discrimination based on race or ethnicity in connection with his bar application.

### 3.5   Langadinos's motion to amend shows bad faith, which further justifies denial.

Langadinos's disregard for the Court's prior ruling demonstrates bad faith. Rather than focusing on curing the specific deficiencies identified in the Court's prior order, he has attempted to resurrect dismissed claims, add new claims beyond the permitted scope, and join new parties. *See Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015) ("In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt."). This approach wastes judicial resources and shows disrespect for court orders, further justifying dismissal.

## 4.   CONCLUSION

In sum, Langadinos's proposed amendments are futile and exceed the scope of amendment previously permitted. His motion for leave to amend is DENIED. His ADA public accommodation discrimination claim against the WSBA, as stated in his original complaint, Dkt. No. 1, may proceed. The parties must file a joint status report and discovery plan within fourteen days of this Order. *See* Dkt. No. 8.

Dated this 26th day of March, 2025.

Jamal N. Whitehead
United States District Judge

# Exhibit 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREGORY LANGADINOS,

           Plaintiff,

    v.

WASHINGTON STATE BAR
ASSOCIATION, WASHINGTON
STATE BAR ASSOCIATION BOARD
OF GOVERNORS, LISA
AMATANGEL, Associate Director;
Litigation and Internal Operations,
JULIE SHANKLAND, Coordinator;
ADA/504 WSBA, WASHINGTON
STATE SUPREME COURT,

           Defendants.

CASE NO. 2:23-cv-250

ORDER DENYING MOTION FOR
RECONSIDERATION AND
GRANTING IN PART MOTION TO
POSTPONE JOINT STATUS REPORT

17

18

19

20

21

22

23

      On March 26, 2025, the Court denied Plaintiff Gregory Langadinos's motion

to file an amended complaint and ordered the parties to file a joint status report and

discovery plan within 14 days. Dkt. No. 62 at 14. On April 9, 2025, Langadinos filed

a motion for reconsideration as well as a motion to extend the deadline for filing a

joint status report. Dkt. Nos. 64, 65. The Court DENIES Langadinos's motion for

ORDER DENYING MOTION FOR RECONSIDERATION AND GRANTING IN PART MOTION TO
POSTPONE JOINT STATUS REPORT - 1

reconsideration and GRANTS IN PART his motion to postpone, resetting the deadline for filing a joint status report to 14 days from the date of this order.

"Motions for reconsideration are disfavored." LCR 7(h)(1). The Court "will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." *Id.* Motions for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (emphasis in original) (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters. Inc.*, 229 F.3d at 883).

Langadinos raises three main arguments, none of which meet the high standard to justify reconsideration. First, Langadinos concedes that even though the Court instructed him to amend only certain claims, his proposed amended complaint repleaded claims that the Court dismissed with prejudice and added new causes of action. Langadinos argues that he failed to follow the Court's instructions because he "was severely affected" by "eight different medical ailments and conditions" that he experienced leading up to the deadline to seek amendment. Dkt. No. 64 at 3–5 (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (1990)) (noting courts consider whether the "amended complaint would have greatly

ORDER DENYING MOTION FOR RECONSIDERATION AND GRANTING IN PART MOTION TO POSTPONE JOINT STATUS REPORT - 2

1  altered the nature of the litigation" even though "this factor is not fatal to

2  amendment[.]").

3      Langadinos's argument assumes the Court denied his motion to amend

4  merely for his failure to follow instructions, but this is not the case. Instead, the

5  Court combed through each of Langadinos's proposed claims and found them

6  deficient and amendment futile. Nothing in Langadinos's motion for reconsideration

7  alters the Court's analysis.

8      Second, Langadinos argues that Defendants will not suffer prejudice if he is

9  permitted to replead two specific causes of action: (1) his claim under Title II of the

10 Americans with Disabilities Act (ADA) against the Washington State Supreme

11 Court; and (2) his intentional infliction of emotional distress against all defendants.

12 Dkt. No. 64 at 2, 6. Langadinos cites *Logan v. Zimmerman Brush Co.*, 455 U.S. 422,

13 437 (1982), but this case is inapposite. *Logan* involved a discrimination claim under

14 the Illinois Fair Employment Practices Act, which is not relevant to Langadinos's

15 claims. Moreover, the Court already gave Langadinos an opportunity to amend to

16 cure the deficiencies in his claims, but his proposed amended complaint failed to do

17 so. The Court will not grant unlimited chances to amend where the Court finds such

18 an exercise would be futile.

19     Finally, Langadinos argues that the Court misconstrued his allegation that

20 his reasonable accommodation request was never before State Supreme Court

21 Justice Debra Stephens. Dkt. No. 64 at 7. Langadinos contends that the Court's

22 analysis fails to consider his allegation that the State Supreme Court and

23 Washington State Bar Association "willfully and purposely omitted to mention to

ORDER DENYING MOTION FOR RECONSIDERATION AND GRANTING IN PART MOTION TO
POSTPONE JOINT STATUS REPORT - 3

[Justice] Stephens" his accommodation request. But the Court did not misconstrue Langadinos's allegations—he requested an accommodation with his online bar application, a process managed by the Washington State Bar Association. Langadinos made no accommodation request to the State Supreme Court.

Accordingly, Langadinos fails to raise arguments or evidence that could not have been previously presented earlier in the litigation. The Court DENIES Langadinos's motion for reconsideration, Dkt. No. 64, and GRANTS IN PART his motion to extend time, Dkt. No. 65. The Court ORDERS the parties to file a joint status report and discovery plan within 14 days of this Order.

Dated this 25th day of April, 2025.

Jamal N. Whitehead
United States District Judge

ORDER DENYING MOTION FOR RECONSIDERATION AND GRANTING IN PART MOTION TO POSTPONE JOINT STATUS REPORT - 4